IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COAST BUICK GMC CADILLAC, INC., a New Hampshire corporation doing business as Holloway Buick GMC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MAHINDRA & MAHINDRA, LTD. a company incorporated and registered under the Indian Companies Act of 1913, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:12-CV-1935-TWT |

ORDER

This is an action for fraud, negligent misrepresentation, and civil conspiracy. It is before the Court on Defendant Mahindra USA, Inc.'s Motion to Dismiss [Doc. 18]. For the reasons set forth below, the Court DENIES the Defendant's Motion to Dismiss.

I. Background

The Plaintiffs, Coast Buick GMC Cadillac, Inc., Crown Global, LLC, Snider Motors, Inc., Mauro Motors, Inc., and One World Armada of Bellevue, Inc. are car dealerships (collectively "the Dealers"). The Defendants are Mahindra & Mahindra,

Ltd. ("Mahindra"), an Indian corporation, and Mahindra USA, Inc. (Compl. ¶ 2.) Mahindra USA is a wholly-owned subsidiary of Mahindra, with its principal place of business in Houston, Texas. (Compl. ¶ 3.)

In September 2006, Mahindra and Global Vehicles, U.S.A., Inc. executed a dealership network agreement to sell and service Mahindra Scorpio pickup trucks and SUVs in the United States after the vehicles had been certified to meet U.S. emissions and safety standards. The Plaintiffs allege that Mahindra and Mahindra USA never intended to meet U.S. emissions and safety standards before the deadline specified in its contract with Global Vehicles, which allowed them to void the contract with Global Vehicles.[1] The deadline was originally August 31, 2009, but was later extended by agreement to June 11, 2010.

The "Mahindra Defendants" benefitted from this agreement being temporarily in place, as they received $9.5 million and trade secrets from the Plaintiffs during the interim. (Compl. ¶¶ 92-93.) The Plaintiffs allege that Mahindra and Mahindra USA never intended to bring its vehicles to the United States through the Plaintiffs and pursuant to its agreement with Global Vehicles, but nonetheless continually represented that their plan was to do so. The Plaintiffs allege that Mahindra and

---

[1] The Plaintiffs offer no motive for this seemingly inexplicable course of conduct.

Mahindra USA conspired to fraudulently and negligently induce them into transferring funds and trade secrets to nonparty Global Vehicles in return for the privilege of joining an automobile distribution network that Global Vehicles was forming to distribute trucks and SUVs manufactured by Mahindra in the United States.

The Plaintiffs filed the Complaint in this Court on June 4, 2012 [Doc. 1]. The Complaint alleges that Mahindra USA committed fraudulent inducement, negligent misrepresentation, and civil conspiracy, and seeks punitive damages and attorneys' fees. Mahindra USA filed this Motion to Dismiss on July 9, 2012, asking this Court to dismiss all of these claims [Doc. 18]. Mahindra has not been served.

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality

Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

Complaints that allege fraud must satisfy Rule 9(b)'s heightened pleading standard. Under Rule 9(b), a complaint must "state with particularity ... the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff satisfies Rule 9(b) when the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; and (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). Put more succinctly, this rule requires that a plaintiff plead all the elements of the first paragraph of a newspaper story: "the who, what, when, where and how." Garfield v.

NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006); In re Scientific-Atlanta, Inc. Sec. Litig., 239 F. Supp. 2d 1351, 1358 (N.D. Ga. 2002). Rule 9(b) and its requirements serve an "important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Ziemba, 256 F.3d at 1202 (citation omitted).

### III.  Discussion

#### A.  Fraudulent Inducement

In order to establish a claim for fraudulent inducement, the Plaintiffs must allege a "(1) false representation by [Mahindra USA]; (2) scienter; (3) intent to induce the [Plaintiffs] to act or refrain from acting; (4) justifiable reliance by the [Plaintiffs]; and (5) damage to the [Plaintiffs]." Next Century Communications Corp. v. Ellis, 318 F.3d 1023, 1027 (11th Cir. 2003), quoting Ades v. Werther, 256 Ga. App. 8 (2002). The Plaintiffs must present their allegations with the particularity required under Rule 9(b). See Ziemba, 256 F.3d at 1202.

The Plaintiffs pled several misrepresentations by Mahindra USA with sufficient particularity. The Plaintiffs pled misrepresentations by Mahindra USA executives Robert Masone and Derek Johannes, and Mahindra USA directors Pawan Goenka and Pravin Shah, in person and through the media.

The Plaintiffs sufficiently pled misrepresentations by Mahindra USA executives Robert Masone and Derek Johannes. The Plaintiffs allege that Johannes is "Mahindra USA's domestic liaison" and "Masone [is] Vice President of Marketing for Mahindra USA." (Compl. ¶ 10.) A corporation is liable for misrepresentations made by its agents "that are committed in the prosecution of and within the scope of its business." Velten v. Regis B. Lippert, Intercat, Inc., 985 F.2d 1515, 1522 (11th Cir. 1993), quoting Smith v. Hawks, 182 Ga. App. 379 (1987). The Plaintiffs allege that Johannes and Masone advised Global Vehicles that Mahindra USA would help build excitement for the Mahindra vehicle launch, and that Mahindra USA would assist Global Vehicles with setting up an assembly line for Mahindra trucks in Georgia. (Compl. ¶ 19.) If Johannes and Masone knew that Mahindra did not plan to conduct a vehicle launch and did not plan to set up an assembly line for Mahindra trucks in Georgia, these statements were false representations. The Plaintiffs allege that fraudulent representations were made to a third party, Global Vehicles, in order to indirectly defraud the Plaintiffs. Georgia law "supports an indirect fraud claim." Lawson v. Smith and Nephew Richards, Inc., No. 4:96-CV-297, 1999 WL 1129677, at *7 (N.D. Ga. Sept. 30, 1999), citing Florida Rock & Tank Lines, Inc. v. Moore, 258 Ga. 106, 107 (1988). The Plaintiffs can establish fraud where the defendant "intends to defraud the plaintiff, the defendant knows the plaintiff will rely on a third-party, the

defendant fraudulently induces the third-party to act, and the plaintiff relies on the act or actions of the third-party and, as a result, is defrauded." Lawson, 1999 WL 1129677, at *7.

The Plaintiffs also sufficiently pled misrepresentations by Goenka and Shah. Goenka is "President of Mahindra's Automotive Sector" and a director of both Mahindra and Mahindra USA. (Compl. ¶¶ 3, 16.) Shah is "Mahindra's Chief Executive of International Operations" and a director of both Mahindra and Mahindra USA. (Compl. ¶¶ 3, 8.) The Plaintiffs particularly allege many misrepresentations made by Goenka and Shah. These include:

- During a Dealer trip to India in February 2006, Goenka and Shah "assured the dealers that the Scorpio would be certified for U.S. standards and ready for distribution by 2008." (Compl. ¶ 26.)
- During that same trip, Goenka and Shah vehemently said they did not have "any doubts about the ability to certify their vehicles for the U.S. market." (Compl. ¶ 26.)
- Also in India in February 2006, Goenka and Shah represented Mahindra's "intent to enter the U.S. market and to start delivering vehicles by 2008." (Compl. ¶ 27.)
- "From April to August 2006," Goenka "represented to . . . the Dealers that [Mahindra's] trucks and SUVs would comply with U.S. standards for safety and emissions regulations within two years, or by the end of 2008." (Compl. ¶ 30.) Goenka also stated that "Mahindra's launch date would take place within 'two years.'" (Id.)
- On April 19, 2007, "Goenka stated that each Dealer's 'investment' in Mahindra would be protected based on the 'readiness' of Mahindra's vehicles for the U.S. market." (Compl. ¶ 41.)

- Also in April 2007, "Goenka repeatedly and falsely claimed that individuals would 'soon be driving [the] Scorpio in the USA' and 'soon [each dealer] will get one of these in the USA.'" (Compl. ¶ 42.)
- During that same April 2007 show, "Goenka claimed that the Mahindra product would be ready 'at the end of 2008, early 2009.'" (Compl. ¶ 42.)
- Between the Spring of 2007 and 2009, Goenka and Shah "specifically represented to . . . the Dealers that the certification process was on target and that the promised time-line would be met." (Compl. ¶ 48.)
- From the end of 2008 to September 2010, "Goenka [and] Shah . . . reassured . . . the Dealers that Mahindra's vehicles would shortly pass all U.S. homologation and certification requirements." (Compl. ¶ 56.)
- "On May 11, 2009, Goenka met with . . . the Dealers to announce that the U.S. certification procedures for the Scorpio vehicle were nearly complete." (Compl. ¶ 58.)
- That same day, Goenka stated that "Mahindra 'know[s] it can pass everything' and 'all that's left is the road test.'" (Compl. ¶ 58.) After that meeting, Goenka "traveled to various dealerships [and] claimed that Mahindra's trucks were passing every requirement for U.S. certification." (Id.)
- "On May 12, 2009, Goenka paid a visit to Gerald Jones' dealership where Goenka provided assurances that Mahindra's vehicles were certified and ready for the U.S. market." (Compl. ¶ 60.)

The Plaintiffs state that Goenka and Shah made these misrepresentations in their dual roles as directors of both Mahindra and Mahindra USA. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 9.) Mahindra USA argues that Goenka and Shah's claims were made while wearing their Mahindra hats, but not their Mahindra USA hats. A corporation may be held "vicariously liable for the torts of its agents" only if the torts

"are committed in the prosecution of and within the scope of its business." Velten, 985 F.2d at 1522. The Plaintiffs have alleged facts that allow a reasonable person to infer that Mahindra USA was involved in a plan to deceive the Dealers. Mahindra USA emphasizes that the parent and subsidiary are not the same legal entity, but while "[a] parent/subsidiary relationship does not in and of itself establish the subsidiary as either the alter ego of the parent...or as the parent's actual or apparent agent....one corporation–completely independent of a second corporation–may assume the role of the second corporation's agent in the course of one or more specific transactions." Kissun v. Humana, Inc., 267 Ga. 419, 421 (1997). In asking the Court to conclude that Goenka and Shah made these misrepresentations pursuant to their employment relationship with Mahindra and not their relationship with Mahindra USA, Mahindra USA asks the Court to decide a question of fact on the Motion to Dismiss. The Plaintiffs have sufficiently pled that Goenka and Shah made misrepresentations as agents of Mahindra USA. Whether they can produce evidence to support this at summary judgment or trial is another question.

Finally, the Plaintiffs allege that Goenka and Shah made misrepresentations through magazine and newspaper articles upon which they expected the Plaintiffs to rely. (Compl. ¶¶ 52, 54, 61, 62, 73.) The Court finds these misrepresentations conceptually similar to other indirect fraud claims. Here the Plaintiffs allege that

Mahindra USA "intend[ed] to defraud the plaintiff[s], [Mahindra USA] kn[ew] the plaintiff[s] [would] rely on [the press], [Mahindra USA] fraudulently induce[d] the [press] to act [by publishing falsities], and the plaintiff[s] relie[d] on the act or actions of the [press] and, as a result, [were] defrauded." Lawson, 1999 WL 1129677, at *7. The Court finds that the Plaintiffs sufficiently pled misrepresentations by Mahindra USA through the media.

      The Plaintiffs have sufficiently alleged scienter. The Plaintiffs state that "[t]he Mahindra Defendants made these representations knowing that they were false, and knowing that they never intended to bring Mahindra vehicles into the U.S. in the fashion that they touted." (Compl. ¶ 94.) The Plaintiffs are only required to provide facts that indicate fraudulent intent. In re Cabletron Sys., 311 F.3d 11, 39 (1st Cir. 2002) ("The plaintiff may combine various facts and circumstances indicating fraudulent intent...to satisfy the scienter requirement."). The Plaintiffs have alleged that Mahindra USA's officers and directors played an active role in the alleged fraud. The Plaintiffs pled that Mahindra USA officers and directors highlighted Mahindra USA's successful tractor business and the timeline for Mahindra vehicles' entry into the U.S. while knowing that Mahindra had no intention of entering the U.S. market. (Compl. ¶ 94.) The Plaintiffs allege that Goenka led a "dog and pony show" to lure the Plaintiffs into paying millions of dollars and divulging trade secrets. (Compl. ¶¶

40, 47.) They further allege that while the Plaintiffs were turning over money and secrets, the Mahindra Defendants refused to divulge whether U.S. specific testing had been completed or whether the Mahindra vehicles had obtained the required U.S. certification. (Compl. ¶ 49.) The Plaintiffs also allege that the Mahindra Defendants delayed submitting paperwork to the EPA in order to have a pretext for terminating their commercial relationship with the Plaintiffs. (Compl. ¶ 74.)

Furthermore, Shah and Goenka had access to EPA and FMVSS testing records that they did not show to the Plaintiffs. See Florida State Bd. of Admin. v. Green Tree Financial Corp., 270 F.3d 645, 665 (8th Cir. 2001) (holding that the publication of statements while having access to information suggesting the statements were materially inaccurate gives rise to a strong inference of scienter). The Plaintiffs further allege that Johannes, a Mahindra USA executive, secretly procured confidential financial information belonging to the Plaintiffs. (Compl. ¶¶ 50-51.) The Plaintiffs have alleged that Mahindra USA intended to defraud the Plaintiffs.

The Plaintiffs have also pled justifiable reliance. The Plaintiffs alleged that "[b]ut for the misrepresentations made by the Mahindra Defendants, Plaintiffs would not have paid a premium amount to the Mahindra Defendnats and spent millions of dollars acquiring, retrofitting and/or constructing their facilities for the introduction of Mahindra vehicles." (Compl. ¶ 96.) Promises as to future events are actionable

when made with the present intention not to perform. Lanham v. Mr. B's Oil Co., Inc., 166 Ga. App. 372 (1983). Moreover, "[a]s a general rule, the issue of whether a party's reliance is reasonable and justified is a question of fact to be determined by the factfinder." Breckenridge Creste Apts., Ltd. v. CitiCorp Mortgage, Inc., 826 F. Supp. 460, 466 (N.D. Ga. 1993), citing Business Resources, Inc. v. General Amusements, Inc., 186 Ga. App. 185, 186 (1988). Therefore, the Court will not resolve this question on this Motion to Dismiss.

Finally, Mahindra USA argues that the Plaintiffs do not allege what Mahindra USA gained by the alleged fraud. Alleging what the defendants obtained as a consequence of the fraud is a Rule 9(b) pleading requirement, but is not an element of a claim for fraudulent inducement in Georgia, which instead requires the Plaintiffs to demonstrate harm to themselves. Ziemba, 256 F.3d at 1202; Next Century Communications Corp., 318 F.3d at 1027. The Plaintiffs state that the "Plaintiffs handed more than $9.5 Million and trade secrets to the Mahindra Defendants." (Compl. ¶ 93.) The Plaintiffs use the inclusive term "Mahindra Defendants" to refer to Mahindra and Mahindra USA. It is impossible for the Plaintiffs to know which moneys and trade secrets were obtained by Mahindra and which were obtained by Mahindra USA without discovery.

    B.    <u>Negligent Misrepresentation</u>

A claim for negligent misrepresentation does not carry the heightened pleading standard applicable to a claim for fraud. To establish a claim for negligent representation, the Plaintiffs must prove: "(1) [Mahindra USA's] negligently supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Harris v. FDIC, No. 2:10-CV-231, 2011 WL 3652199, at *4 (N.D. Ga. Aug. 18, 2011), quoting Futch v. Lowndes Cnty., 297 Ga. App. 308 (2009). As stated above, the Plaintiffs have pled knowing misrepresentations by Mahindra USA to the Plaintiffs directly and to third parties upon which Mahindra USA knew the Plaintiffs would rely. The Plaintiffs pled justifiable reliance on these misrepresentations, and economic harm from these statements. The Plaintiffs have pled a claim for negligent misrepresentation.

  C. <u>Civil Conspiracy to Commit Fraud</u>

"To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act with methods which constitute a tort..." <u>McIntee v. Deramus</u>, 313 Ga. App. 653, 656 (2012). The Plaintiffs have adequately pled claims for fraudulent inducement and negligent misrepresentation. The Plaintiffs have also alleged "a common design establishing 'that two or more persons in any manner, either

positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.'" Id.  The Plaintiffs have alleged that Mahindra and Mahindra USA engaged in a common design to mislead the Plaintiffs to believe that Mahindra would bring its vehicles to the U.S. market by making false representations, and thereby gain money, trade secrets, and free advertising. (Compl. ¶ 103.)

Finally, Mahindra USA argues that, pursuant to the intracorporate conspiracy doctrine, a parent company cannot conspire with its wholly owned subsidiary. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 22; Reply Br. at 14.)  "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000).  The doctrine provides that "just as it is not legally possible for an individual to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." Id.  The doctrine "attribute[s] the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor." Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 767 (11th Cir. 2000).

The intracorporate conspiracy doctrine is federal law, developed while interpreting the Sherman Antitrust Act, see Copperweld Corp. v. Independence Tube

Corp., 467 U.S. 752 (1984), and thereafter applied in certain other contexts, see, e.g., McAndrew, 206 F.3d at 1037 (intracorporate conspiracy doctrine applied in the context of a 42 U.S.C. § 1985(3) claim), and not applied in other contexts, see, e.g., Kirwin v. Price Communications Corp., 391 F.3d 1323 (11th Cir. 2004) (intracorporate conspiracy doctrine not applied in the context of a criminal RICO claim).  However, the civil conspiracy claim is a Georgia state law claim, brought before this Court under diversity jurisdiction.  Under Georgia law, a corporation and its agents can conspire with one another.  See, e.g., White v. Shamrock Bldg. Sys., Inc., 294 Ga. App. 340, 348 (2008); Northwest Plaza, LLC (MI) v. Northeast Enterps., Inc., 305 Ga. App. 182, 193 (2010).  Therefore, the intracorporate conspiracy doctrine does not apply in this case.

      D.    Punitive Damages and Attorneys' Fees

The Plaintiffs have pled that they are entitled to punitive damages and attorneys' fees. (Compl. ¶ 93.)  The Plaintiffs have pled a claim for fraudulent inducement. "If...there is evidence of fraud, punitive damages can be awarded..." Paul Dean Corp. v. Kilgore, 252 Ga. App. 587, 593 (2001); see also Dow Chemical Co. v. Ogletree, Deakins, Nash, Smoak & Stewart, 237 Ga. App. 27, 32 (1999); O.C.G.A. § 51-12-5.1(b).  "[I]n a suit for fraud and deceit the plaintiff is entitled to have submitted to the jury the matter of allowance of attorneys fees." McMichen v.

Martin Burks Chevrolet, 128 Ga. App. 482, 484 (1973).  The claims for punitive damages and attorneys' fees survive this Motion to Dismiss.

## IV.  Conclusion

For the reasons set forth above, the Court DENIES the Defendant's Motion to Dismiss [Doc. 18].  All of the claims and all of these issues may be revisited at summary judgment.

SO ORDERED, this 6 day of March, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge